UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

THOMAS GUSTAV WESTERLUND,

    Defendant.
                                                  /

File No. 1:09-CR-154

HON. ROBERT HOLMES BELL

## **O P I N I O N**

Defendant Thomas Gustav Westerlund has been charged in a four-count indictment with two counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), (e), one count of possession of images of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). (Dkt. No. 13, Indictment.) This matter is before the Court on Defendant's motion to suppress evidence. (Dkt. No. 26.)

**I.**

On March 26, 2009, police officers from the City of Zeeland, assisted by officers from the Michigan State Police, searched Defendant's house on Lakeshore Drive in Grand Haven, his vehicle, and the Tulip Time office where he was employed, pursuant to a warrant for

evidence relating to alcohol, marijuana, and devices used to photograph, record, and store images of minors without clothes or using alcohol or controlled substances.[1]

During the search the officers found marijuana plants, still photos of unclothed minors, bottles of Canadian whiskey, computers, DVDs, paintball guns, and computer games. After the search Defendant made statements to the police, including admissions that he had looked at images of unclothed boys on his computer, that he had entertained young boys at his home, that he had supplied them with alcohol, and that on a few occasions he had been undressed in the presence of undressed young boys. Based upon this information, the police obtained a second warrant dated March 27, 2009, to search the contents of the computers that were seized in the search, and a third warrant dated April 14, 2009, to search Defendant's sailboat.

---

[1] The warrant described the property to be searched for and seized, if found, as:

> Liquor bottles to include the brand Canadian House Whiskey or a name similar that may have been used by minors. Any evidence of the use or possession of marihuana to include but not limited to pipes, bowls, bongs, and marihuana. Cameras, video recording storage devices, electronic storage devices, computers and peripheral devices that may have been used to photograph, record, and store images of minor children who are partially or completely undressed or in the presence of adults who may be having sexual relationships or showing the use of alcohol or controlled substances by minors. Any and all evidence related to the possession, manufacture, or distribution of child pornography. The computer used and accessed by Tom Westerlund in the office of the Tulip Time Festival.

(Ex. 1.)

**II.**

Defendant moves to suppress the evidence obtained pursuant to the March 26, 2009, warrant for lack of probable cause, overbreadth, and material omissions. Defendant moves to suppress his statements and the evidence obtained pursuant to the later two warrants as fruit of the initial illegal search.

The Fourth Amendment prohibits search warrants unless they have been issued "upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. "In order to demonstrate probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that 'indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)).

The magistrate who issues the warrant is required to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). "The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *United States v. Berry*, 565 F.3d

332, 338 (6th Cir. 2009) (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). "The magistrate's determination of probable cause is afforded great deference and should be reversed only if arbitrarily made." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)).

A. **Probable Cause**

The Court finds that the March 26 warrant affidavit clearly contained probable cause to search Defendant's residence for evidence of the crime of providing intoxicants to minors. The affidavit in support of the search warrant contained evidence that BJ[2] and JP, minors, were intoxicated on March 25, and that both BJ and JP had reported that Defendant had supplied the alcohol to them. JP further reported that on March 25 they went with Defendant to the Express Island Liquor Store where Defendant purchased a fifth of Canadian House Whiskey and two liter bottles of Coke. JP's statement was corroborated by the surveillance tape at Express Island which showed an individual who fit the description of Defendant purchasing alcohol, and by a receipt for the purchase of one fifth of Canada House TRV and a two-liter bottle of Coke Zero.

The statements of BJ and JP were also corroborated by statements from BJ's brother WJ, who was sixteen years of age. WJ reported that he had known Defendant for a few years, that he had been to Defendant's house on two occasions, that Defendant had provided

---

[2]Minors will be referred to by their initials to protect their privacy. Fed. R. Crim. P. 49.1(a)(3).

him alcohol, cigarettes, and marijuana, and that a camera had been used to take pictures at some of the parties at Defendant's house. WJ also said he thought NW, who was fifteen years old, was having a sexual relationship with Defendant and that WJ had observed NW and Defendant touching each other's penises.

Defendant objects to WJ's statements for lack of corroboration and staleness. Defendant contends that because WJ gave an inaccurate description of Defendant's residence, and because WJ did not give a time frame for when he had been at Defendant's house, none of his statements should have been credited without corroboration.

The Court does not find that WJ's statements were unreliable for lack of corroboration or staleness. Zeeland Chief of Police William Olney, who signed the affidavit for the March 26, 2009, search warrant, testified that the inaccuracies in WJ's description of the house did not cause him to doubt WJ's credibility. WJ's identification of a rural setting, a large wooded lot, and a long gravel driveway, matched the house at the address the officers were able to find for Defendant. Moreover, the Court finds that WJ's statements were generally corroborated by NW's mother, who indicated that two of her sons had spent time at Defendant's house, that she was concerned about how close Defendant had come to NW, and that she had heard that Defendant could be molesting him and providing liquor and drugs. The precise time frame regarding WJ's experiences at Defendant's house was not important to establishing probable cause to search for evidence of Defendant's provision of intoxicants to BJ and JP the previous day.

"[A]n affidavit must allege 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" *United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009) (quoting *Sgro v. United States*, 287 U.S. 206, 210 (1932)). "'The expiration of probable cause is determined by the circumstances of each case and depends on the inherent nature of the crime.'" *Id.* (quoting *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006)). One of the variables relevant to this consideration is the nature of the thing to be seized: is it "perishable and easily transferable or of enduring utility to its holder?" *Hython*, 443 F.3d at 485.

To the extent WJ provided information about the use of cameras, the Court finds that this information was not stale. Photographs are designed to preserve memories. The Court is satisfied that there was a fair probability that photographs, even from several years past, would be preserved. Moreover, the probability of finding photographs was not diminished by the fact that WJ also reported that he thought most of the pictures had been deleted. WJ did not profess to know the status of all of the pictures that had been taken. Some of the pictures may still have been in the camera. Moreover, WJ's use of the term "deleted" suggests that the pictures were in digital format and that they may have been stored on disks or on the computer, where even deleted pictures may have been retrievable through computer forensics. *See United States v. Brown*, 579 F.3d 672, 676 (6th Cir. 2009) (noting that 945 images that had been deleted from the defendant's computer were recovered by the agents).

The search warrant was executed the day after Defendant reportedly supplied alcohol to BJ and JP. The search warrant affidavit provided a substantial basis for the magistrate's conclusion that evidence of the crime of providing intoxicants to minors would be found at Defendant's house, vehicle, and office, and to justify a search for liquor bottles, images of minors drinking alcohol, and devices that may have been used to create or store images of minors drinking alcohol.

**B. Overbreadth**

Defendant contends that even if the warrant affidavit established probable cause to search for evidence of providing intoxicants to minors, or even child molestation, the warrant was still invalid to the extent it authorized a search for evidence of child pornography. The affidavit contained no evidence or suggestion that Defendant had taken any pictures of any of the minors interviewed in 2009 in a state of undress, or that Defendant had shown those minors any pictures of other minors in a state of undress.

The fact that WJ reported sexual touching between Defendant and a minor does not, in itself, establish probable cause to believe that Defendant was in possession of child pornography. *United States v. Hodson*, 543 F.3d 286, 290-92 (6th Cir. 2008). The only evidence in the warrant affidavit directly connecting Defendant to photographs of naked minors was one isolated complaint made in 2002 by Mary Duistermars, president of the Holland Tulip Time Festival, that when she asked Defendant to assist with some financial questions, he placed a disk in a computer, and the first image that appeared was a picture of

7

a naked young child. She reported that Defendant immediately deleted that photo and two others.

Defendant objects to consideration of the information in the affidavit concerning the 2002 police investigation because it was stale, uncorroborated, and because the affidavit omitted material information. Defendant notes that the 2002 investigation arose from an isolated complaint that was over seven years old, and that the officers who investigated the 2009 alcohol complaint failed to disclose to the magistrate that, despite a forensic examination, the police had not found any evidence of any photographs of naked minors on the Tulip Time computer. The officers also failed to interview Mary Duistermars about her 2002 complaint.

The government contends that the 2002 investigation should not be considered in isolation. The government contends that under the totality of the circumstances, the 2002 report of possession of child pornography, considered together with evidence of child molestation, providing alcohol to minors, and taking pictures of minors at Defendant's residence, established a fair probability that Defendant possessed child pornography in 2009.

Upon review of the warrant affidavit in its totality, the Court concludes that the evidence of child pornography in the affidavit was stale, and that it was not sufficient to support probable cause to believe that evidence of child pornography would be found at Defendant's residence.

Nevertheless, the remedy when a search warrant is overbroad is not to suppress all evidence seized under it. "To the contrary, the remedy for an overbroad warrant is to sever the overbroad portions of the warrant from those portions that are sufficiently particular." *United States v. Ford*, 184 F.3d 566 (6th Cir. 1999) (citing *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir. 1991)); *see also United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003) (holding that where contraband was not found pursuant to possibly overbroad specifications, the issue of overbreadth was moot).

In the case before this Court, if the references to child pornography in the affidavit and search warrant are severed, the police still had probable cause to search for evidence of providing intoxicants to minors.

Chief Olney testified that in the course of executing the search warrant, the officers found a beer bong (Ex. 6), a bottle of Canada House Whiskey and small bottles of Wild Turkey Whiskey (Ex. 7), a margarine tub with joints, a pipe, and zig-zag papers (Ex. 8), and small scales (Ex. 9). In the bedroom area the officers found a package of nine photographs, including a photograph of a young male seated on the toilet holding a whiskey bottle and a picture of a young boy with Defendant. (Ex. 10.) In the office area the officers found a pile of 21 pieces of paper with photographs printed on them. (Ex. 4.) In the bedroom nightstand the officers found six pieces of paper with photos printed on them. (Ex. 5.) The photographs in Exhibits 4 and 5 were of naked or unclothed 10-15 year old males, and referenced internet sites or computer storage files.

The photographs were discovered in plain view within the proper scope of the search for evidence of the crime of providing intoxicants to minors. The photographs were immediately recognizable as evidence of other crimes relating to child molestation and child pornography. "[A] law enforcement agent in making a valid search may seize property found on the premises being searched which is the subject matter of a different crime, even though the officer was not aware that such property was on the premises when the search was initiated." *United States v. Eisner*, 297 F.2d 595, 597 (6th Cir. 1962) (citing *Harris v. United States*, 331 U.S. 145 (1947)). This plain view exception to the warrant requirement authorizes an officer to seize evidence without a warrant where the following four factors are met: (1) the officers are legally present; (2) the officers see something that immediately appears to be evidence; (3) the item is actually in plain view; and (4) the officer has a lawful right of access to the object. *United States v. McLevain*, 310 F.3d 434, 439 (6th Cir. 2002) (citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), and *Horton v. California*, 496 U.S. 128 (1990)). The officers were legally present in Defendant's home to search for evidence of providing intoxicants to minors. In connection with that search the officers were lawfully entitled to search for photographs. Some of the photographs found during the search were evidence of the crime of providing intoxicants to minors. Other photographs clearly and immediately appeared to be evidence of other crimes, including child molestation and child pornography. The discovery of those photographs comes within the plain view exception to the warrant requirement.

In addition, Special Agent Blair Babcock, a computer forensic expert with the U.S. Immigration and Customs Enforcement Bureau testified that a forensic examination of Defendant's computers for images of providing intoxicants to minors would have inevitably lead to the discovery of the images of child pornography because the forensic search cannot distinguish between images of child pornography and images of minors with alcohol. All images on the computer would have to be reviewed by the examiner.

The Court is satisfied that the discovery of evidence of child pornography was inevitable during the proper scope of the officers' search for evidence of providing intoxicants to minors. Accordingly, the overbreadth of the search warrant did not invalidate the search.

## C. Neutral and Detached Magistrate

Defendant also challenges the search warrant on the basis that it was not signed by a neutral and detached magistrate.

The decision on whether to issue a warrant is to be made "'by a neutral and detached magistrate,'" rather than by "'an officer engaged in the often competitive enterprise of ferreting out crime.'" *United States v. West* 520 F.3d 604, 609 (6th Cir. 2008) (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1947).

Defendant challenges the neutrality of Magistrate Mark Bos, who signed the March 26, 2009, warrant, on the basis that Magistrate Bos was a member of the Holland Police

Department in 2002 when the first investigation was conducted into the Tulip Time computer used by Defendant.

Chief Olney testified that in 2002 Magistrate Bos was a sergeant in charge of traffic at the Holland Police Department, and that Magistrate Bos did not have any role in the 2002 investigation of Defendant because it was not within the scope of his duties. Indeed, Magistrate Bos's name does not appear on the police reports from the 2002 investigation. Chief Olney testified Magistrate Bos did know who Defendant was, but only because Bos, in his role as a sergeant in the traffic division, had attended meetings with Defendant regarding the Tulip Time Parade. According to Chief Olney, Bos expressed no animosity or bias toward Defendant.

There is no evidence to support Defendant's assertion that Bos was not acting in a neutral and detached capacity when he authorized the March 26, 2009, search.

### D. Material Omissions

Defendant also contends that the affidavit contained material omissions. Specifically, Defendant objects to the affiant's failure to advise the Magistrate that in 2002 no child pornography was found on the computer taken from the Tulip Time office, and the case was closed.

Chief Olney testified that he did not consider his failure to mention the fact that no child pornography had been found on the computer to be misleading. He noted that the computer analyzed in 2002 was the Tulip Time office computer, not Defendant's personal

computer. Because Defendant was no longer working at the Tulip Time Office when the computer was seized, he most likely would have removed or deleted any items of child pornography that had been on the computer.

The Court finds no evidence that the affiant was trying to hide anything from the Magistrate. The Court further finds that the fact that no child pornography was found on the Tulip Time office computer was not material to the issuance of the March 26, 2009, search warrant.

### E. Fruit of the Poisonous Tree

Defendant moves to suppress his statements, the March 27, 2009, warrant to search his computers, and the April 14, 2009, warrant to search his sailboat as fruit of the poisonous tree of the illegal March 26, 2009, searches of his residence, vehicle, and workplace. *See United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008) ("[E]vidence and statements obtained from [an initial illegal search] must be excluded as 'fruit of poisonous tree.'") (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). Defendant has not articulated any other independent basis for suppressing this evidence.

Because this Court has determined that the March 26, 2009, search was not illegal, Defendant's statements and the evidence from the later searches are not subject to suppression under the fruit of the poisonous tree doctrine.

## III.

For the reasons stated herein and on the record on October 29, 2009, Defendant's motion to suppress evidence will be denied.

An order consistent with this opinion will be entered.


Dated: November 4, 2009                    /s/ Robert Holmes Bell
                                           HON. ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE